IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Matthew Lennon,<br>　　　　　Plaintiff,<br>v.<br><br>Trans Union, LLC,<br>　　　　　Defendant. | Docket 2:25-cv-1431-CFK |

**PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS**

INTRODUCTION AND PROCEDURAL HISTORY

This case arises out of Defendant's failure to conduct a reasonable reinvestigation of an item on Plaintiff's credit report. Specifically, Plaintiff had entered into a complete mutual release of all claims with a creditor, but a tradeline for an alleged pre-existing account with that same creditor remained on his credit report. Plaintiff disputed this item multiple times with Defendant, but after each dispute, Defendant determined that the information was verifiable.

When Defendant continued to report this tradeline after three disputes, Plaintiff commenced an action in the Montgomery County Court of Common Pleas. Defendant timely removed, and filed a motion to dismiss Plaintiff's claim. Plaintiff now files this brief in opposition.

STATEMENT OF FACTS

As set forth in the Complaint, in January of 2024, Plaintiff and Midland Credit Management, Inc. ("Midland") entered into a mutual release ("the Mutual Release"). (Complaint at ¶ 9-12.) A copy of the Mutual Release was attached to the Complaint as Exhibit A. The Mutual Release was extremely broad, and, in relevant

part, stated as follows: "Midland Credit Management, Inc. releases Matthew Lennon and all attorneys **from all claims**." (Ex. A to the Complaint (emphasis added).) The Mutual Release further acknowledged that debt was being released through the Mutual Release, and further noted that Midland would request deletion of any tradeline associated with the claims being released. (Ex. A to the Complaint.)

However, when Plaintiff went and checked his credit report, he saw that Midland was still reporting a negative account on his report. (Compl. at ¶ 15.) Specifically, in March of 2024, Plaintiff saw that his Trans Union report included an alleged Midland debt in the amount of $3,396. (Compl. at ¶¶ 16-17.) The disputed tradeline was being reported by Defendant prior to the date that Plaintiff and Midland entered into the Mutual Release. (Compl. at ¶ 12.) The Mutual Release included the disputed account. (Compl. at ¶ 14.)

After seeing that this tradeline was still on his report, Plaintiff submitted a dispute letter to Defendant, asking that the debt be removed from his credit report. (Compl. at ¶¶ 18-19.) As part of this dispute, Plaintiff included a copy of the Mutual Release, so that Defendant could review the language itself and delete the account. (Compl. at ¶ 20.) However, instead of deleting the account, Defendant verified and provided updated information with, surprisingly, an increased balance. (Compl. at ¶¶ 24-26.) Plaintiff thereafter submitted two other disputes to Defendant. (Compl. at ¶¶ 27, 36.) In each of these disputes he again included the Mutual Release he entered into with Midland. (Compl at ¶¶ 28, 38.) And, in response to each dispute, Defendant verified the account. (Compl at ¶¶ 33-34, 43-44.)

ARGUMENT

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, is an extremely important consumer protection statute that Congress designed to require the consumer reporting agencies to adopt reasonable procedures with regard to, *inter alia*, the accuracy of consumer reports. 15 U.S.C. § 1681(b). As the Third Circuit has held, the FCRA is a remedial statute, and its consumer-oriented objectives support a liberal construction of the statute. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

While the FCRA imposes a number of requirements on consumer reporting agencies such as Defendant, one of the most important requirements for this case is found in 15 U.S.C. § 1681i. That section governs the requirements that must be followed in the event that there is a dispute made regarding an item contained on a consumer report. When a consumer disputes an account, the consumer reporting agency is required to conduct a "reasonable reinvestigation" regarding the disputed information. This reinvestigation must include reviewing and considering the information submitted by the consumer. The statute further states that:

> If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be **inaccurate or incomplete or cannot be verified**, the consumer reporting agency **shall**--
> **(i) promptly delete that item of information from the file of the consumer**, or modify that item of information, as appropriate, based on the results of the reinvestigation . . . .

15 U.S.C. § 1681i(a)(5)(A)(i)(emphasis added). While consumer reporting agencies are often required to send the dispute to the furnisher of information, they are not required to if the consumer reporting agency deletes the disputed information within 3 business days after the date on which it receives notice of the dispute. 15 U.S.C. § 1681(a)(8). Thus, Congress clearly contemplated a situation where the consumer reporting agency is able to make a quick and easy determination that information is incorrect and should be deleted. As discussed below, this case presents such a clear situation, and Defendant's handling of Plaintiff's disputes do not comport with its duties under the FCRA.

Defendant's entire argument is premised on its belief that Plaintiff has not demonstrated a "factual inaccuracy" with the disputed information. Instead, Defendant argues that Plaintiff has only demonstrated a "legal inaccuracy."[1] However, Defendant's characterization of Plaintiff's disputes is not consistent with the plain language of the Mutual Release.

As mentioned above, each of Plaintiff's disputes included a copy of the Mutual Release itself. Importantly, the language of the Mutual Release is incredibly broad. Specifically, it states that "Midland Credit Management, Inc. releases Matthew Lennon and all attorneys **from all claims**." (emphasis added). It is difficult, if not impossible, to imagine broader language for a release than one of "all claims." Yet, Defendant argues that "the release does not note what 'all claims' may mean in the

---

[1] The Third Circuit has not held that legal inaccuracies and factual inaccuracies should be treated differently under the statute, and Plaintiff does not concede that they should be treated differently.

4

context of the collection lawsuit." (Def's Br. at p. 5.) However, the language "all claims" is not subject to such a nitpicky argument. The release did not include *any* limiting language, such as "all claims that could have been brought in the underlying litigation" or "all claims that were identifiable at the time of the signing of the release." If such language had been present, then Defendant's argument that it is not the proper entity to determine the scope of the release *could* ultimately have some merit based on the exact verbiage.² But, here, no such limiting language exists. Instead, Defendant is simply tasked with interpreting the words "all" and "claims." And, while some courts have held that a consumer reporting agency is not required to adjudicate a legal dispute, the more recent and well-reasoned authority has held that the correct standard that should be considered is whether the alleged inaccuracy is objectively and readily verifiable. *See, e.g, Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368 (11th Cir. 2024); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 252 (4th Cir. 2025). Here, under that standard, it is clear that Plaintiff has stated a claim.

      The discussion in *Sessa* is very helpful here. In that case, Trans Union, the same Defendant as in the present case, reported information about a vehicle lease. The lease provided the consumer with the opportunity to purchase the vehicle at the conclusion of the lease for $19,444.07. However, the furnisher of the information told Trans Union that there was instead a balloon payment of that amount due

---

² However, a consumer reporting agency still should not be able to prevail in a motion to dismiss, such as in the present case, where a party has made a specific allegation that the release covered the account at issue.

5

when the lease concluded.[3] Thus, Trans Union reported this balloon payment on the consumer's credit report. The trial court entered summary judgment in favor of Trans Union, holding that a consumer reporting agency cannot be held liable when the accuracy at issue requires a legal determination, and the consumer appealed.

While the appeal was pending, the Second Circuit issued a decision in a separate case, in which it held that the definition of accuracy under the FCRA "requires a focus on objectively and readily verifiable information." *Mader v. Experian Information Solutions, Inc.*, 56 F.4th 264 (2d Cir. 2023). Thus, in light of this decision, Trans Union argued in *Sessa* that a consumer reporting agency "cannot be held liable when the accuracy at issue requires a legal determination as to the validity of the debt." *Sessa* 74 F.4th at 42 (quoting Trans Union's Rule 28(j) letter discussing *Mader*). Conversely, the consumer in *Sessa* argued that *Mader* focused "not on the allegedly legal nature of the claimed inaccuracy, but on whether the alleged inaccuracy 'evades objective verification.'" *Id.* at 42-43(quoting the consumer's Rule 28(j) letter). And, the Second Circuit held that it "agree[d] with Sessa." *Id.* at 43. In vacating and remanding, the Second Circuit again emphasized that an inaccuracy must be objectively and readily verifiable, and it also specifically held that "there is no threshold inquiry under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature." *Id.*

---

[3] The Second Circuit noted that "[t]he lease's plain language did not require Sessa to make a balloon payment." *Sessa*, 74 F.4th at 41. Thus, it is clear than an analysis of the plain language of an agreement should be reviewed when determining if an inaccuracy is being reported.

6

At least one court has dealt with a nearly identical issue to the one presented here. In *Blocker v. Equifax Information Services, LLC*, 2:22-cv-00883-RDP, Doc 37 (N.D. Ala. Mar. 6, 2023),[4] the consumer and the creditor—again Midland—had entered into a mutual release of claims. And, as in the present matter, there was an account that continued to be reported after the release was signed. The consumer disputed the account, and included a copy of the settlement agreement with Midland. However, the account was not deleted by the consumer reporting agencies.[5] The consumer therefore filed suit.

In response, the consumer reporting agencies filed a motion to dismiss in *Blocker*, arguing, *inter alia*, that the dispute regarding the settlement agreement raised a legal inaccuracy rather than a factual inaccuracy. The court rejected this argument. In doing so, it held that if a legal question is sufficiently settled, and that a dispute regarding a debt is therefore readily and objectively verifiable, the consumer reporting agency can be required to resolve that dispute. *Id.* at p. 7. Thus, the court ultimately held that the consumer had stated a claim, because, following the execution of the settlement agreement, the consumer had plausibly alleged a factual inaccuracy with the disputed account being reported on his credit report. As the *Blocker* court succinctly stated: "[t]he CRA Defendants premised their Motion to Dismiss on the argument that Plaintiff's First Amended Complaint alleges a legal issue and that he failed to allege a factual inaccuracy in their reports. As discussed

---

[4] A copy of the *Blocker* decision is being attached to this brief.

[5] Defendant was also one of the consumer reporting agencies litigating the *Blocker* case.

above, Plaintiff's First Amended Complaint plausibly alleges a factual inaccuracy in the CRA Defendants' reporting." *Id.* at p. 8. As a result, the court denied the motion to dismiss.

Another case on point is *Kanani v. Experian Info. Sols., Inc.*, 2024 WL 3729484 (M.D. Fla. Aug. 8, 2024). In *Kanani*, the consumers brought a lawsuit over an allegedly inaccurate tradeline being reported by a landlord. The consumers had been forced to vacate their apartment because it was infested with snakes and scorpions. The consumers alleged that they contacted their landlord, and entered into an oral "walkaway agreement," which absolved the consumers of any financial obligation related to the rent. However, the consumers then saw a collection account on their credit report related to this apartment rental. The consumers disputed the account, and the account was verified. The consumer reporting agencies filed a motion to dismiss the claim, arguing that it boiled down to a legal dispute over whether the presence of snakes and scorpions in an apartment would result in a discharge of a tenant's obligations under the lease agreement.[6] However, the court disagreed with the consumer reporting agencies. Instead, it held that the case actually presented a straightforward application of law to facts. *Id.* at *3. Specifically, the consumers alleged that they entered into an oral agreement with the landlord and that they therefore did not owe any debt to the landlord. Thus, the court held that there was no *legal* issue at play, rather there was simply a *factual*

---

[6] Trans Union was one of the parties litigating the motion to dismiss in *Kanani*.

issue as to whether the consumers entered into an agreement with the landlord to discharge any debt. And, because the case was presented on a motion to dismiss, and because the consumers alleged that they did enter into such an agreement and that they therefore did not owe a debt, the court allowed the consumers claim to proceed.

The exact same analysis used in *Blocker* and *Kanani* can be applied in the present case. Here, it is clear that under an "objectively and readily verifiable" standard, that Plaintiff is entitled to prevail. The Supreme Court of Pennsylvania "has stated that the effect of a release must be determined from the ordinary meaning of its language." *Buttermore v. Aliquippa Hosp.*, 522 Pa. 325, 328-29 (1989).[7] As stated above, the release states that Midland released Plaintiff "from all claims." The Court's analysis can begin and end with simply looking to the plain meaning of these terms. [8,9] This case is just another situation of a straightforward

---

[7] In *Buttermore*, the plaintiff had issued a release to a driver involved in an automobile accident. The scope of the <u>claims</u> released in *Buttermore* was narrower than the scope of the claims released here. But, the release in *Buttermore* applied to more <u>people</u>, stating in relevant part that the release applied to: "[the driver], [h]is/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators and any and all other persons, associations and/or corporations . . . ." *Buttermore,* 522 Pa. at 327. Based on this language, the Court then held that this broad release applied to medical providers who had treated the plaintiff—even though those medical providers had no connection at all with the driver who was the other signatory to the release. Thus, if a release can be construed broadly enough to cover claims against parties not even a party to the agreement, there would certainly not be anything improper or surprising about a release being construed broadly to cover "all claims" between the actual signatories of the release.

[8] The first five definitions for "all" in Merriam-Webster's dictionary are: (1a) "the whole amount, quantity, or extent of" (1b) "as much as possible" (2) "every member or individual component of" (3) "the whole number or sum of" (4) "every" and (5) "any whatever." ALL Definition & Meaning – Merriam Webster's Dictionary, available at https://www.merriam-webster.com/dictionary/all, *last visited June 3, 2025*.

[9] Merriam-Webster's defines the noun form of "claim" as: (1) "a demand for something due or believed to be due" (2a) "a right to something" (2b) "an assertion open to challenge" and (3)

application of law to the facts. And the only conclusion that can be drawn from the "all claims" language is that every claim that Midland had against Plaintiff at the time it executed the Mutual Release was released.[10]

Furthermore, as set forth in the complaint, the tradeline at issue was one that was reported by Defendant prior to the date that Plaintiff and Midland entered into the Mutual Release. Thus, when it received the disputes containing the Mutual Release, Defendant would be able to determine with complete certainty that: (1) the alleged debt included in the tradeline being disputed predated the Mutual Release, and (2) the Mutual Release forgave all claims, which would necessarily include the disputed tradeline. Plaintiff believes that this would actually be one of the rare instances where a consumer reporting agency *could* (and arguably should) make the type of expedited decision to delete the account that would not even warrant having to send the dispute to the furnisher. 15 U.S.C. § 1681i(a)(8). But, even if Defendant chose to conduct a complete reinvestigation, the only reasonable conclusion that one could draw from the Mutual Release is that the disputed account should ultimately

---

"something that is 'claimed'." CLAIM Definition & Meaning – Merriam Webster's Dictionary, available at https://www.merriam-webster.com/dictionary/all, *last visited June 3, 2025*.

Black's Law Dictionary likewise has an extensive definition for "claim," including but not limited to: (1) "The aggregate of operative facts giving rise to a right enforceable by a court" (2) "The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional" and (3) "A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim*, Black's Law Dictionary (Eighth ed.).

[10] Additionally, as Plaintiff has alleged in the complaint that the Mutual Release included the disputed account, any quibbling by Defendant regarding the "all claims" language would be premature through a motion to dismiss.

be deleted, or at the very least not indicate that Plaintiff owes any balance on the account.

Defendant spends much of its brief discussing cases which have held that debts past the statute of limitations still exist under Pennsylvania law. And, Defendant also goes on to state that "it is well established that previously unenforceable debts can again become recoverable in the future." (Def.'s Br. at p. 4.) However, these arguments have no merit here where Plaintiff and Midland entered into a complete mutual release. Unlike a statute of limitations defense, which can be waived by the consumer, the alleged debt being extinguished in this matter was not the result of passive conduct or the failure to act. And, there is no situation where the alleged account would ever again become enforceable. Simply put, the alleged debt was extinguished through the explicit conduct of both Plaintiff and Midland, who freely entered into the Mutual Release. And, a sophisticated consumer reporting agency such as Defendant is certainly capable of applying the basic English definitions of the words "all" and "claims" to determine that the pre-existing tradeline should not be reported as having an outstanding balance.

Likewise, there is absolutely no merit to Defendant's characterization of the Mutual Release as merely being a "legal defense to repayment . . . ." (Def.'s Br. at p. 5.) As stated above, the Mutual Release completely extinguished all claims, including the alleged account. Characterizing the Mutual Release as merely being a legal defense is similar to stating that the fact that someone never borrowed money in the first place is merely "a legal defense to repayment." And, there is no doubt

11

that a consumer reporting agency is required to investigate claims asserting that a debt was never owed in the first place. *See, e.g., Paulino v. W. Funding II Inc.,* 737 F. Supp. 3d 1338, 1346 (S.D. Fla. 2024)(denying a "legal inaccuracy" motion to dismiss, and holding that whether a loan agreement was ever signed by a consumer was an objective and verifiable fact). There is no meaningful difference between a claim of "not my account" and "any liability for this account was released." If a consumer reporting agency can have to conduct a reinvestigation about the formation of an alleged agreement, it should also be required to determine whether an agreement that extinguished an alleged debt was ever entered into.

Furthermore, Defendant's argument that it complied with its duties to conduct a reasonable investigation by contacting Midland is not at all persuasive. Courts have long held that contacting a furnisher and merely "parroting" the results provided by the furnisher does not excuse a consumer reporting agency from liability. For example, the Third Circuit has held that a reasonable reinvestigation by a consumer reporting agency "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286–87 (7th Cir.1994) (exclusively relying on the furnisher "may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report."); *Stevenson v. TRW Inc.,* 987 F.2d 288, 293 (5th Cir.1993) ("In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information

12

obtained from subscribers."). Thus, Defendant would certainly not be justified in blindly following Midland's response when it was presented with a clear and broad mutual release.[11]

Ultimately, the issue that Defendant wishes to present is not ripe for a decision on a motion to dismiss, because Plaintiff has alleged that the Mutual Release included the disputed account. However, even if the Court does analyze the specific language of the Mutual Release, it is clear that Plaintiff deserves to prevail. The language used in the Mutual Release does not require any legal training or an advanced degree to understand. Defendant should not be allowed to escape potential liability by pretending it is unable or unwilling to apply basic dictionary definitions to a phrase as simple as "all claims." Thus, the Court should deny Defendant's motion.

## CONCLUSION

Congress has recognized that consumer reporting agencies have "grave responsibilities." 15 U.S.C. § 1681a(4). This case provides a clear example of a consumer reporting agency not taking that responsibility seriously enough. A consumer providing a consumer reporting agency with a clear and broad mutual release should not have to go through multiple disputes over the inclusion of a debt that preceded the execution of the mutual release. Defendant's attempts to bury its

---

[11] The same analysis is true here for Defendant's failure to comply with 15 U.S.C. § 1681e. Defendant provides no explanation as to how its repeated verification of a debt that had been part of a mutual release complies with its obligations to maintain policies to ensure maximum possible accuracy. However, as Defendant's motion is premised solely on its argument that there was no inaccuracy, despite the mutual release, Plaintiff is limiting the discussion to that issue.

head into the sand regarding the plain language meaning of the words "all" and "claims" should be thoroughly rejected. Thus, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

*s/ Brett Freeman*
Brett Freeman
Bar Number PA 308834
Attorney for Plaintiff
FREEMAN LAW
606 Hamlin Highway, Suite 2
Lake Ariel, PA 18436
P: (570) 589-0010
F: (570) 456-5955
brett@freeman.law

## CERTIFICATE OF SERVICE

Service is being effectuated through the Court's CM/ECF system.

*s/ Brett Freeman*
Brett Freeman
Bar Number PA 308834
Attorney for Plaintiff
FREEMAN LAW
606 Hamlin Highway, Suite 2
Lake Ariel, PA 18436
P: (570) 589-0010
F: (570) 456-5955
brett@freeman.law
