UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW LENNON,<br><br>        Plaintiff,<br><br>      v.<br><br>TRANS UNION, LLC,<br><br>        Defendant. | CASE NO. 2:25-cv-01431-CFK |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant consumer reporting agency, Trans Union LLC ("TransUnion"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits this Reply Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint (the "Motion"). In support of this Reply, TransUnion hereby submits the following:

**I.      INTRODUCTION**

To state a viable claim under 15 U.S. C. §§ 1681e(b) or 1681i(a), Plaintiff must allege an inaccuracy in his credit file. This is a threshold requirement. If Plaintiff does not allege an actionable inaccuracy, the reasonableness of TransUnion's conduct is not at issue. And, as TransUnion argued in its Motion, alleged inaccuracies that turn on legal disputes are not cognizable under the Fair Credit Reporting Act ("FCRA") as "consumer reporting agencies are not required to investigate the legal validity of the underlying debt in the report." *Lebanon v. Equifax Info. Servs., LLC*, No. 18-1978, 2019 U.S. Dist. LEXIS 118761, at *11 (E.D. Pa. July 15, 2019).

Here, Plaintiff alleges that his credit file contained an inaccuracy because a "Mutual Release" from a prior Magisterial District Court lawsuit ("State Court Action") vaguely stated that it released Plaintiff from "all claims" regarding Midland Credit Management, Inc. ("Midland").

However, the complaint in the State Court Action specified that the claims therein were for a *different debt* owed to Midland. The Mutual Release fails to list any credit account numbers, any specific account balances related to any accounts or any other identifying information tying the instant disputed account to the Mutual Release. As explained in the Motion, a determination as to the scope of the phrase "all claims" would require TransUnion's adjudication and interpretation of Plaintiff's and Midland's subjective beliefs and intent, a legal matter that is not required to be determined by a credit reporting agency. Therefore, under 15 U.S. C. §§ 1681e(b) or 1681i(a), the claimed inaccuracy is not actionable, and Plaintiff has failed to state a claim.

Plaintiff's attempts to salvage his Complaint are unavailing. Plaintiff endeavors to persuade the Court to rely on an "objectively and readily verifiable" standard that has been adopted by the 2nd, 4th and 11th Judicial Circuit Courts. However, this standard has not been adopted by the 3rd Circuit. Plaintiff fails to set forth any 3rd Circuit case law to establish that this Court should no longer distinguish between factual and legal disputes when it comes to alleging inaccuracies in a credit report. Plaintiff also relies on two cases from the 11th Circuit that are not factually analogous to the present matter and should carry little to no weight on this Court's decision.

The result urged by TransUnion is not only consistent with the language of the FCRA as recently interpreted by the 3rd Circuit, but it also makes sense from a policy perspective. TransUnion is not a tribunal. It is neither required nor qualified to sit as the arbiter in relation to terms contained in an overly broad and vague Mutual Release and require it to interpret the unknown prior intent of Plaintiff and Midland. Because Plaintiff admits that the debt exists and was owed and is only asserting a legal defense to the reporting of the same, Plaintiff has not alleged a factual inaccuracy in TransUnion's reporting as required for a *prima facie* FCRA case, and Plaintiff's Complaint should be dismissed. This is especially true given that TransUnion was not

a party to the State Court Action and is without firsthand knowledge regarding the legal ramifications of the Mutual Release. Because Plaintiff has not alleged an objectively verifiable inaccuracy, his Complaint should be dismissed.

## II. ARGUMENT

### A. THE OBJECTIVELY AND READILY VERIFIABLE STANDARD CITED BY PLAINTIFF HAS NOT BEEN ADOPTED BY THE 3RD CIRCUIT

Plaintiff does not dispute the fact that to proceed under 15 U.S.C. §§ 1681e(b) or 1681i(a), he must show inaccuracy in reporting as a threshold matter. *Angino v. Transunion LLC*, 784 F. App'x 67, 69 (3d Cir. 2019); *Bibbs v. Trans Union LLC*, 43 F. 4th 331, 344–45 (3d Cir. 2022); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3rd Cir. 1996). Plaintiff argues that the "more recent and well-reasoned authority" has held that the correct standard should be whether the alleged inaccuracy is objectively and readily verifiable. In support of this position, Plaintiff cites the following cases from the 2nd, 4th and 11th Circuits: *Sessa v. Trans Union, LLC,* 74 F.4th 38, 42 (2d Cir. 2023); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368 (11th Cir. 2024); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 252 (4th Cir. 2025). However, the 3rd Circuit has not adopted the "objective and readily verifiable" standard that has been adopted in the 2nd, 4th and 11th Circuits. Therefore, the Court should rely upon the case law cited in TransUnion's Motion,[1] in that alleged inaccuracies that turn on legal disputes are not cognizable under the FCRA.

Even if the Court relies upon Plaintiff's proffered objectively and readily verifiable standard, his Complaint should still be dismissed. Courts utilizing the objectively and readily verifiable standard still make a distinction where a consumer's complaint requests a CRA to make a legal determination. *Mader v. Experian Info. Sols, Inc.*, 56 F.4th 264, 270 (2d Cir. 2023) (Where there was an unresolved legal question regarding whether a consumer owed a debt, the Court in *Mader* held that it was "not

---

[1] All of which is from this District. *See* Dkt. No. 11-1, at 3.

sufficiently objectively verifiable to render [his] credit report "inaccurate" under the FCRA). As detailed in TransUnion's Motion, the "all claims" language evades objective verification, and Plaintiff's claim is not cognizable under the FCRA.

### B. PLAINTIFF'S DISPUTES TO TRANSUNION PRESENTED A LEGAL QUESTION AND NOT A FACTUAL QUESTION

Plaintiff's Complaint attempts a legal sleight of hand by referencing the State Court Action case number without attaching the Complaint therein or referencing any specific credit account numbers or names of the original creditors to clarify that the debts at issue in the instant action and the State Court Action (and release) are or are not the same. However, when read in conjunction with the Complaint of the State Court Action, it further establishes that Plaintiff's Complaint raises unresolved legal questions.

For a motion to dismiss, "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). There is also "an exception to the general rule [] that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426, (3d Cir. 1997). Documents "whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading" may also be considered on a motion to dismiss. *Pryor v. National Collegiate Athletic Association*, 288 F.3d 548, 560 (ed Cir. 2002).

Plaintiff's Complaint explicitly references and relies upon the State Court Action Complaint that was filed on September 15, 2023. Complaint, Dkt. No. 1, at ¶ 8. This public

document is not only relied upon by Plaintiff, but integral to the allegations in the Complaint, and thus may be considered by this Court in a 12(b)(6) motion.

Plaintiff's instant Complaint and Response state that Midland was reporting a debt on Plaintiff's credit report in the amount of $3,396, which it referred to as the "Alleged Account." Complaint, Dkt. No. 1, at ¶¶ 12 and 14. Conversely, the State Court Action Complaint states that Midland was seeking judgment against Plaintiff for a debt in the amount of $7,555.67 regarding a credit account with Comenity Capital Bank bearing the last four numbers of 4105. See Complaint from Montgomery County Magisterial District Court 38-1-02, Case Number CV-109-23 attached hereto as **Exhibit 1**. In addition, the Mutual Release stated that Midland would request the deletion of any tradeline associate with the "claims released herein." As TransUnion's Motion to Dismiss noted (and the State Court Action Complaint confirms), Plaintiff had multiple Midland tradelines on his credit file. *Compare id. with* Complaint, Dkt. No. 1; *see also* Dkt. No. 11-1, at 5, n.2. In addition, following the signing of the Mutual Release, Midland requested deletion of only the account referenced in the State Court Action. *Id*.

While TransUnion is not analyzing the issue regarding Plaintiff's multiple accounts or the post-Mutual Release actions of Midland due to the 12(b)(6) motion standard, the discrepancy between the debt sued on in the State Court Action and the debt at issue in the instant action shows that Plaintiff's Complaint presents a legal issue as to the interpretation of the term "all claims." TransUnion was not a party to the State Court Action, was not involved in the settlement discussions between Plaintiff and Midland and was not involved in the drafting of the Mutual Release. During a credit reporting agency's investigation into a disputed account, it is not tasked with determining whether parties involved in the negotiation of an unrelated legal instrument

subjectively intended for the word "claims" to refer to the lone Midland account listed in the State Court Action Complaint, or any and all accounts Plaintiff had with Midland.

As described in Trans Union's Motion, Plaintiff's claim hinges on the legal interpretation of the Mutual Release that he included with his disputes and attached as an exhibit to his Complaint. See Complaint, Dkt., No. 1, ¶ 17. Plaintiff argues that the Tradeline should be "appropriately deleted" from his Trans Union credit file, because of Midland's release of "all claims." *Id*., ¶ 51. However, the release does not define what "all claims" may mean in the context of the collection lawsuit. While Plaintiff argues that the term "all claims" is broad enough to include every account that Plaintiff had with Midland, the language is so overly broad and nebulous to require a legal interpretation as to its meaning. Plaintiff makes no attempt to engage the argument that Midland's subjective belief was that the debt was not covered by the release, by Plaintiff's own admission. *E.g.* Complaint, Dkt. No. 1, at 10, ¶¶ 31-34; Dkt. No. 11-1, at 5. Neither does Plaintiff attempt to engage with the other language in the release that Trans Union pointed out in its Motion regarding the release not constituting a discharge of indebtedness or that no 1099 would be issued. *Id*.

While Plaintiff attempts to misconstrue this as merely a factual dispute, this is the precise type of issue that this Court does not require CRAs to officiate. "Consumer reporting agencies are ill equipped to adjudicate contract disputes, [and so] courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Hopkins v. I.C. Systems*, No. 18 02062, 2020 U.S. Dist. LEXIX 88905, at *7 (E.D. Pa. May 19, 2020). Therefore, because Plaintiff has not alleged a factual inaccuracy in Trans Union's reporting to a third party, as required for a *prima facie* FCRA claim, and Plaintiff's claims are instead a legal defense to an admitted debt, Plaintiff's Complaint should be dismissed.

C. **PLAINTIFF'S CITED CASES ARE NOT FACTUALLY ANALAGOUS TO THE PRESENT ACTION**

The authority cited by Plaintiff in his Response is also inapposite and unpersuasive. Plaintiff relies heavily on the 11th Circuit cases of *Blocker v. Equifax Information Services, LLC*, 2:22-cv-00883-RDP (N.D. Ala. Mar. 6, 2023) and *Kanani v. Experian Info. Sols., Inc.*, 2024 WL 3729484 (M.D. Fla. Aug. 8, 2024) as being either "nearly identical" or "on point" to the present case. However, neither case is factually analogous to the present matter.

In *Blocker*, The Court held that the "Settlement Agreement provide[d] an independent reason for deletion of the disputed account" because the "parties mutual releases relating to the Account contained in the Agreement" extinguished the Debt. See P. 7 of *Blocker* decision, attached as unnumbered Exhibit to Plaintiff's Response. The Settlement Agreement in *Blocker* listed the case caption and case number for the Small Claims Court Action (defined as the "Action.") just as in the present case. See Settlement Agreement and Release from *Blocker v. Equifax Information Services, LLC*, 2:22-cv-00883-RDP, attached hereto as **Exhibit 2**. However, unlike the present case, the *Blocker* Settlement Agreement also:

    a. Listed specific account numbers for the original account (defined as the "Debt") and the collections account with Midland Credit Management, Inc. account (defined as the "Plaintiff account"). *Id* at recitals.;

    b. Stated "…the Parties hereto desire to compromise, settle, and release any and all claims arising out of and relating to the Plaintiff Account, any sale, assignment, or transfer of the Plaintiff Account, the Action…." *Id* at recitals;

    c. Stated that the parties were releasing their legal rights in relation to the specific Debt and Plaintiff Account. *Id.* at ¶ 2; and

    d. Contained a clause related to "Unknown Claims" which included all claims, actually known or unknown at the time of the Settlement Agreement, that defendant had against the releasing party. *Id* at ¶ 4.

This clear and objective language did not require any legal interpretation as to the extent of the Agreement. In the present case, the same is not true. the undefined phrase of "all claims"

makes it completely unclear as to whether the release applied to the disputed account, which wasn't even referenced in the State Court Action Complaint, and thus, the legal question as to applicability of the settlement agreement is not sufficiently settled.

Plaintiff cited *Kanani* for the position that "there was no legal issue at play, rather there was simply a factual issue as to whether the consumers entered into an agreement with the landlord to discharge any debt."  See Response to Motion to Dismiss, Dtk. No. 14, pp. 8-9.  However, the *Kanani* Court noted that Plaintiff's allegations were "straightforward application of law to facts" primarily because the case did not turn on any disputed provision of the lease agreement.  *Kanai, 2024 WL at *4*.  In the present case, TransUnion is not disputing the fact that Plaintiff and Midland signed a Mutual Release in January of 2024.  However, TransUnion is not required to adjudicate the vague and overly broad language in the release and whether it applies to the instant disputed Midland debt, or the one that was at issue in the State Court Action that spawned the release.

Thus, Plaintiff's reliance on *Blocker* and *Kanai* is entirely improper.

### III.   CONCLUSION

For these reasons, the Court should grant Defendant's Motion to Dismiss with prejudice.

Dated: June 18, 2025            **BUCHANAN INGERSOLL & ROONEY PC**
By: */s/ Robert J. Murdoch*

Robert J. Murdoch, Esq. (PA 92652)
501 Grant Street, Suite 200
Pittsburgh, PA 15236
T: 412-562-1423
Robert.murdoch@bipc.com

*Counsel for Defendant TransUnion LLC*