IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Matthew Lennon,<br>          Plaintiff,<br>v.<br><br>Trans Union, LLC,<br>          Defendant. | Docket 2:25-cv-1431-CFK |

**PLAINTIFF'S SUR-REPLY BRIEF IN SUPPORT OF HIS
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

INTRODUCTION

Pursuant to Section II.D.3 of the Court's Policies and Procedures for Counsel, Plaintiff hereby files this sur-reply brief in further support of his opposition to Defendant's Motion to Dismiss.

ARGUMENT

In its reply brief, Defendant continues to feign confusion over the meaning of "all claims" in the Mutual Release. In doing so, it seems to argue that the mutual release that Plaintiff entered into with Midland should somehow be read to be less broad than the mutual release in *Blocker*. However, the only real differences that Defendant highlights between the two releases are items in the *Blocker* release that <u>limit</u> its scope. For example, Defendant points out that the *Blocker* release was, by its terms, limited to only include one specific account (Def.'s Reply Br. at p. 7 at ¶¶ A-C),[1] whereas here the release did not have any account limitation—in other

---

[1] In fact, the *Blocker* release states "[it] is specifically understood that this agreement shall be applicable solely to the Plaintiff Account referenced above, and will not apply to any other accounts owned or hereafter acquired by Plaintiff." (*Blocker* release at ¶ 3.) Thus, it is clear that Midland

words, the release here was necessarily broader than in *Blocker* And, the only other distinction highlighted by Defendant was that in *Blocker* there was language regarding "unknown claims."(Def's Reply Br. at p. 7 at ¶ D.) However, this "belt and suspenders" language does not provide anything more than the "all claims" language present in the instant case—*all* claims necessarily already includes both unknown and known claims. If anything, it should be easier for TransUnion to understand the release in the present case than it would have been to understand the release in *Blocker*.

Defendant's attempt to distinguish *Kanani* likewise is not persuasive. In its reply brief, Defendant claims that *Kanani* was just a simple application of law to fact. But, in *Kanani*, the consumer reporting agencies argued that the dispute required them to interpret a disputed provision of a lease agreement, and that having to make this interpretation should excuse them from liability under the FCRA. The court rejected this argument, holding that whether an agreement was entered into was a factual question.[2] That exact same scenario is present here—the consumer reporting agency says that it is required to interpret a disputed provision, but in actuality what matters is whether the release was ever entered into between

---

knows how to use limiting language for the scope of a release when it wishes to do so. The fact that the release in this instant matter does not contain any such limiting language is very telling.

[2] In fact, a case cited by Defendant, *Hopkins v. I.C. Sys., Inc.*, 2020 WL 2557134, at *8 (E.D. Pa. May 20, 2020) also held that whether a settlement agreement was entered into was a factual determination—and therefore this decision can actually support Plaintiff's position.

Plaintiff and Midland. The Court here should also reject Trans Union's attempt to avoid its obligation to conduct reasonable reinvestigations.[3]

Likewise, Defendant's focus on the Magisterial Court action is misplaced.[4] The Magisterial Court action is only mentioned at one point in the Mutual Release—where it says that Midland will dismiss that case. And the document then goes on to release Midland and Plaintiff of *all claims*. Just like it would be erroneous for Plaintiff to assert that any claims that he had against Midland—whether FDCPA, FCRA, or otherwise—that existed prior to the Mutual Release are still valid, Midland also cannot argue that any other claims it had against Plaintiff—whether alleged debts or otherwise—are still valid. And, Defendant's assertion that there would need to be an analysis of Plaintiff's and Midland's subjective intent and belief as to the meaning of the release is also incorrect.[5] As

---

[3] Defendant also seems to imply that Plaintiff's cases *Blocker* and *Kanini* are not persuasive because they arise outside of the Third Circuit. However, Plaintiff's cases, are consistent with the state of the law in the Third Circuit. None of the cases cited by the parties are binding, and Plaintiff's cases are just as persuasive as the cases that Defendant cites from this district. And, as Plaintiff's cases are factually similar and both involve releases entered into between the consumer and an alleged creditor, the Court should follow their reasoning.

[4] There is absolutely no basis to Defendant's suggestion that Plaintiff attempted a "legal sleight of hand" regarding the magisterial court lawsuit. Plaintiff made mention of this lawsuit in the complaint simply to provide context as to why Plaintiff and Midland would have even had discussions that would have resulted in the Mutual Release. And, as this Court is certainly well aware, it is extremely common for releases to be broad and cover multiple claims, buying complete peace between the parties. Simply, Plaintiff never asserted or implied that he had been sued on the Alleged Account. Instead, his argument has always been that the Mutual Release included *all* accounts that predated the execution of the release—and that the Alleged Account is therefore covered.

[5] Defendant claims that "Plaintiff makes no attempt to engage the argument that Midland's subjective belief was that the debt was not covered by the release." (Def.'s Reply Br. at p. 6.) However, this is untrue. In response to Defendant's argument about subjective intent, Plaintiff provided authority that the effect of a release must be determined by the plain meaning of the language in the release. *See Buttermore v. Aliquippa Hosp.*, 522 Pa. 325, 328-29 (1989). Midland's subjective belief is not at all relevant to the plain language of the release—and therefore Midland's subjective belief cannot have any bearing on what claims are covered by the release. But, second, on

3

Plaintiff has explained at length, the release was broad and covered "all claims." And, under Pennsylvania law, the language of the release itself governs, not the subjective intent of the parties. (*See* Plaintiff's Opposition at p. 9 (discussing *Buttermore* decision).)

Finally, Defendant's repeated references to language in the mutual release governing tax treatment—*e.g.*, the language that said that there was no discharge of indebtedness as defined in a certain section of the tax code and that a 1099-C would not be issued—is completely unavailing, and does not even warrant discussion. But, as Defendant repeatedly focuses on this irrelevant language, Plaintiff will briefly respond to Defendant's assertions. The Mutual Release specifically states that the release of debt does not constitute "discharge of indebtedness" as used in 26 U.S.C. § 6050P because "[t]he parties acknowledge that the claims being released are the subject of good-faith disputes . . . ." (Ex. A to the Complaint.) The phrase "discharge of indebtedness" is a term of art in the tax code. And, when a claim is subject to a good-faith dispute, no discharge of indebtedness occurs, and therefore no tax consequences arise from its forgiveness. *See Zarin v. Comm'r*, 916 F.2d 110 (3d Cir. 1990)

Likewise, a 1099-C is never an item that would have to be issued from a debt buyer such as Midland, because a 1099-C is an item that is only required to be issued by a financial institution or various governmental agencies. 26 U.S.C.

---

a motion to dismiss, all reasonable inferences must be made in favor of the non-moving party. Thus, if the Court believes that Midland's subjective belief is relevant, it must assume for purposes of this motion that Midland *did* intend to include the Alleged Account in the Mutual Release.

§ 6050P and 26 C.F.R. § 1.6050P-1.[6] But, furthermore, a 1099-C is an item that only has to be issued when there is a "discharge of indebtedness." *Id.* As discussed above, because the parties agreed that there was a good-faith dispute regarding liability, and that therefore no such discharge of indebtedness occurred, the parties also agreed that no 1099 would be issued. Of course, none of this language has *any* bearing on the plain language of the scope of the release, which, again, covers "all claims" by the parties against each other. The plain language meaning of the Mutual Release should have been enough for Defendant to determine that the Alleged Account was not being correctly reported, and it should not be permitted to shirk its responsibilities by feigning confusion over "belt and suspenders" language regarding tax treatment.

## CONCLUSION

Thus, for the foregoing reasons, as well as the reasons set forth in Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

                    *s/ Brett Freeman*
                    Brett Freeman
                    Bar Number PA 308834
                    Attorney for Plaintiff
                    FREEMAN LAW
                    606 Hamlin Highway, Suite 2
                    Lake Ariel, PA 18436
                    P: (570) 589-0010
                    F: (570) 456-5955
                    brett@freeman.law

---

[6] Midland does not fit the definition of a financial institution, because lending money is not a significant portion of its business, and because it otherwise does not fit within the definitions of a financial entity as set forth in 26 U.S.C. § 6050P(c)(2).

## **CERTIFICATE OF SERVICE**

Service is being effectuated through the Court's CM/ECF system.

                                        *s/ Brett Freeman*
                                        Brett Freeman
                                        Bar Number PA 308834
                                        Attorney for Plaintiff
                                        FREEMAN LAW
                                        606 Hamlin Highway, Suite 2
                                        Lake Ariel, PA 18436
                                        P: (570) 589-0010
                                        F: (570) 456-5955
                                        brett@freeman.law