IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW LENNON,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **TRANS UNION, LLC,** | : | No. 25-cv-1431 |
| *Defendant*. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                           **July 11, 2025**

Defendant Trans Union, LLC moves to dismiss Plaintiff Matthew Lennon's Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11 at 1. For the reasons set forth below, this Court will grant the Motion (ECF No. 11).

**I.     BACKGROUND**

The following facts are taken from Plaintiff's Complaint unless otherwise specified and are accepted as true at the motion-to-dismiss stage. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). In September 2023, Plaintiff Matthew Lennon was sued by Midland Credit Management, Inc., ECF No. 3 at 9, in the Montgomery County Court of Common Pleas, ECF No. 15-2 at 2. In its complaint, Midland alleged that Plaintiff owed $7,555.67 for failing to pay a credit account balance. *See id.*

On January 8, 2024, Midland and Plaintiff executed a mutual release to dismiss the above lawsuit. *See* ECF No. 3 at 9, 17. The mutual release stated that "in consideration for the dismissal of the lawsuit," Midland "release[d] Matthew Lennon and all attorneys from all claims" and "Matthew Lennon release[d] Midland Credit Management, Inc. and all employees and attorneys from all claims." *Id.* at 17. The release also stated that "[n]o other parties or companies are released," "that the claims being released are the subject of good-faith disputes," and that the

release "does not constitute the 'discharge of indebtedness' as used in 26 U.S.C. § 6050P." *Id.* The release further noted that Midland would "request the deletion of any tradeline associated with the claims released herein." *Id.*

Prior to January 8, 2024, Midland was also reporting that Plaintiff owed a $3,396 balance. *See id.* at 9. A March 11, 2024 consumer disclosure prepared by Defendant Trans Union, LLC, a credit bureau, included the $3,396 debt. *Id.* On March 26, 2024, Plaintiff contacted Defendant to dispute this debt, attaching the above mutual release. *Id.* at 10. Subsequently, Defendant's investigation results showed that the debt had been "Updated" to $3,397. *Id.* Plaintiff contacted Defendant two additional times, on June 4 and 18, 2024, to dispute the debt, and once again attached the above mutual release. *See id.* at 11. Each time, Defendant's investigation results stated that Plaintiff owed $3,397 to Midland. *Id.*

On February 7, 2025, Plaintiff sued Defendant in the Montgomery County Court of Common Pleas for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ECF No. 3 at 7, 13. Plaintiff specifically alleged that by reporting the $3,396 debt, and adjusting it to $3,397, Defendant had "fail[ed] to follow reasonable procedures to assure the maximum possible accuracy of [his] consumer reports," in violation of 15 U.S.C. § 1681e(b), and "fail[ed] to conduct reasonable reinvestigations of [his] disputes" and delete or modify inaccurate information, in violation of 15 U.S.C. § 1681i. ECF No. 3 at 13. As a result of Defendant's conduct, Plaintiff claimed that his "ability to obtain credit" and "pursue other opportunities" had been impacted, and he sought compensatory, statutory, and punitive damages as a result. *Id.* at 12.

Defendant subsequently removed this case to federal court. *See* ECF No. 3 at 1 (amended notice of removal). On May 1, 2025, after receiving an extension of time to respond to the Complaint, ECF No. 13 at 1, Defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11 at 1.

II.   **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that plausibly state a claim to relief. *Vorchheimer*, 903 F.3d at 105. In deciding such a motion, the court must "accept all factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* However, the court must "disregard legal conclusions" and elements "supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). At the motion-to-dismiss stage, the court may consider the pleadings, materials attached to the pleadings, and "matters of public record." *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (citation omitted).

III.   **DISCUSSION**

Plaintiff sues Defendant under §§ 1681e(b) and 1681i of the Fair Credit Reporting Act. *See* ECF No. 3 at 13. Under § 1681e(b), when a consumer reporting agency "prepares a consumer report," the agency must "follow reasonable procedures to assure maximum possible accuracy of the information." 15 U.S.C. § 1681e(b). And when a consumer disputes the information contained in his or her report, § 1681i imposes additional obligations on the agency, such as to "conduct a reasonable reinvestigation" into the accuracy of the information and delete inaccurate information. *See id.* § 1681i(a)(1)(A), (5)(A)(i). Based on these provisions, courts have concluded that to plead a violation of either § 1681e(b) or § 1681i, the plaintiff must plausibly allege that his or her consumer report contained an inaccuracy. *See Bibbs v. Trans Union LLC*, 43 F.4th 331, 342, 344 (3d Cir. 2022) ("[A] plaintiff must show an inaccuracy to proceed under either § 1681e(b) or § 1681i(a) . . . .").

Plaintiff argues that Defendant inaccurately reported a $3,396—and later, $3,397—debt, which he claims was discharged by a mutual release he entered into with Midland. *See* ECF No. 3 at 9. Defendant, however, disputes that the mutual release—which arose from a different lawsuit—

covered this particular debt. *See* ECF No. 11-1 at 5. Whether Plaintiff owes this debt to Midland therefore turns on a legal dispute: how to interpret Plaintiff and Midland's mutual release.

The Third Circuit has declined to take a position on whether an entity can be liable under the Fair Credit Reporting Act for reporting information whose validity turns on resolving a legal dispute. *See Ritz v. Equifax Info. Servs., LLC*, No. 23-2181, 2025 WL 1303945, at *3 (3d Cir. May 6, 2025). Other circuits, however, disagree on this matter. *See id.* The First Circuit has held that consumer reporting agencies are not responsible for resolving "disputed legal questions," and that a plaintiff must show that his or her report contained a "*factual* inaccuracy." *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). Other circuits have looked instead to whether the supposed error is "objectively and readily verifiable." *See Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251–52 (4th Cir. 2025); *Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 288 (5th Cir. 2025); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1363 (11th Cir. 2024); *see also Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022) (The "FCRA does not categorically exempt legal issues from the investigations that furnishers must conduct."). Under the "objectively and readily verifiable" standard, consumer reporting agencies must accurately report information that presents legal questions if those questions can be answered by the "straightforward application of law to facts." *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) (citation omitted); *see, e.g.*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) (where it was undisputed that a debt was discharged in bankruptcy, the defendant inaccurately reported that the plaintiff owed a balance on the debt). Even still, "many legal disputes will not involve objectively and readily verifiable information." *Roberts*, 131 F.4th at 252.

Applying either of the above standards, Plaintiff has not alleged an inaccuracy in his consumer report for the purposes of §§ 1681e(b) and 1681i. First, under the approach taken by the

4

First Circuit, Plaintiff has not shown that his consumer report contained a "factual inaccuracy." *Chiang*, 595 F.3d at 38 (emphasis omitted). He argues that the instant debt appeared on his consumer report, though he and Midland had signed a mutual release to settle a prior lawsuit, ECF No. 3 at 12, which concerned a $7,555.67 debt, *see* ECF No. 15-2 at 2. Whether the mutual release covered the $3,397 debt now at issue—which Defendant refutes, *see* ECF No. 11-1 at 5—is a "disputed legal question[]" about the scope of the release, not a factual or transcription error. *See Chiang*, 595 F.3d at 38.

Second, under the approach taken by other circuits, the disputed debt is not "objectively and readily verifiable." *See Mader*, 56 F.4th at 269. Plaintiff does not dispute that he previously owed a debt to Midland, which is distinct from the $7,555.67 debt over which he was sued. *See, e.g.*, ECF No. 14 at 5, 10–13. He argues only that the $3,397 debt was covered by the mutual release he executed with Midland to settle his lawsuit regarding the $7,555.67 debt. *See id.* To verify whether Plaintiff owed the $3,397 debt at issue, Defendant would therefore have had to interpret the language of the mutual release. *See* ECF No. 3 at 17. And though that document released Plaintiff of "all claims," the release is silent on whether this referred to all claims arising from Midland's lawsuit over the $7,555.67 debt or any possible claims over any debt. *See id.*; *see also S. Stone Co. v. Singer*, 665 F.2d 698, 700–01 (5th Cir. Unit B 1982) (finding a release that covered "all claims" to be ambiguous as to the subject matter it covered); *Abrams v. Feinblatt*, No. 88-3009, 1988 U.S. App. LEXIS 20467, at *7 (4th Cir. May 31, 1988) (reaching a similar conclusion as to a consent order). The release also lacks language that courts have found resolves ambiguity, such as specifying that the release applies to "all *possible* claims" concerning a particular "incident." *See Crosby v. City of Chicago*, Nos. 18-3693 & 19-1439, 2020 U.S. App. LEXIS 7035, at *4, *9 (7th Cir. Feb. 5, 2020) (emphasis added). And the release includes possibly limiting language, specifying that Midland would request the deletion of "tradeline[s] associated

with the claims *released herein*." ECF No. 3 at 17 (emphasis added).

Plaintiff alleges in his Complaint that "[t]he Mutual Release included" the debt at issue, *id.* at 9, thereby resolving any ambiguity. *See* ECF No. 14 at 10 n.10. However, that is a legal conclusion about the scope of the mutual release. *See Davis*, 824 F.3d at 341. Because this Court does not accept legal conclusions as true at the motion-to-dismiss stage, *see id.*, Plaintiff's allegation does not cure the release's ambiguous scope.

Interpreting the ambiguous language of Plaintiff's release is therefore not the type of "straightforward application of law to facts" that makes an error "objectively and readily verifiable." *See Sessa*, 74 F.4th at 43 (citation omitted); *see also Holden*, 98 F.4th at 1368 (concluding that where a debt's validity turned on interpreting a timeshare agreement, it was "not objectively and readily verifiable because it stems from a contractual dispute without a straightforward answer"). To hold otherwise would put consumer reporting agencies like Defendant in the business of "adjudicat[ing] legal disputes" about ambiguous contractual provisions that they did not draft—a role not envisioned by the Fair Credit Reporting Act. *See Mader*, 56 F.4th at 269. The point that Defendant would be saddled with an improper role applies here with even more force: Plaintiff insists that even if Midland confirmed that the release did not cover the $3,397 debt, Defendant would have to engage in—and could be held liable for—its own interpretation of the release. *See* ECF No. 14 at 12–13.

Plaintiff points to several cases to support his position, such as Memorandum Opinion and Order, *Blocker v. Equifax Info. Servs., LLC*, No. 2:22-CV-883 (N.D. Ala. Mar. 6, 2023); *Kanani v. Experian Info. Sols., Inc.*, No. 6:23-cv-2483, 2024 WL 3729484 (M.D. Fla. Aug. 8, 2024); and *Paulino v. W. Funding II Inc.*, 737 F. Supp. 3d 1338 (S.D. Fla. 2024). *See* ECF No. 14 at 7–10, 12. However, these cases are not binding on this Court and, regardless, are distinguishable. In *Blocker*, the plaintiff sued a consumer reporting agency regarding an account that was clearly

6

covered by his mutual release. Memorandum Opinion and Order at 2–3, *Blocker*, No. 2:22-CV-883. And the language of the mutual release was considerably broader than Plaintiff's release—Blocker's release covered "any and all claims, liabilities, demands, suits, and causes of action of every nature and kind." *Id.* at 2. Unlike this case, *Blocker* therefore involved a "straightforward application" of the release to the debt at issue. *See Mader*, 56 F.4th at 270. Next, *Kanina* did not involve interpreting "any disputed provision" of an agreement at all—there, the plaintiffs alleged that they paid their rent in full but that their consumer reports included a debt for unpaid rent. *See* 2024 WL 3729484, at *3. And Plaintiff's reliance on *Paulino* raises a similar problem, given that it involved whether someone took out a loan in the plaintiff's name—"a factual question that [could] be answered in the affirmative or negative." 737 F. Supp. 3d at 1346.

Though Plaintiff fails to allege that Defendant reported "inaccurate" information, he is not without recourse. He could sue Midland for breaching its obligations under the release, such as to "request the deletion of any tradeline associated with the claims released herein," ECF No. 3 at 17, insofar as the release covers the debt now at issue. *See Mader*, 56 F.4th at 271 (noting that a plaintiff was "not without options" to resolve a dispute over a debt because he could "dispute the debt directly" with the debtor). Furthermore, as part of any action against Midland, Plaintiff could seek "a declaration that [he] no longer owed [the] debt." *Holden*, 98 F.4th at 1368. And because Plaintiff alleges that Defendant is still reporting the $3,397 debt on his report, ECF No. 3 at 12, "he could go directly to [Defendant] with the declaration and get [Defendant] to take it off [his] credit history." *Holden*, 98 F.4th at 1369 (citation omitted).

At base, Plaintiff's debt presents a legal question that is open to dispute—how to interpret his mutual release. Given that legal issue, Defendant did not report "inaccurate" information on Plaintiff's credit report under either of the approaches outlined above. And except for perhaps issues that involve the "straightforward application of law to facts," *Sessa*, 74 F.4th at 43, the Fair

7

Credit Reporting Act does not require consumer reporting agencies to resolve legal questions. *See Mader*, 56 F.4th at 269; *see also Chiang*, 595 F.3d at 38 (credit reporting agencies and furnishers "are 'neither qualified nor obligated to resolve'" legal disputes (citation omitted)). Accordingly, Plaintiff fails to state a claim under §§ 1681e(b) and 1681i of the Fair Credit Reporting Act.

## IV.    CONCLUSION

For the reasons discussed above, this Court will grant Defendant's Motion to Dismiss (ECF No. 11). Because Plaintiff sues Defendant under the Fair Credit Reporting Act for failing to delete or modify his debt in light of the release he executed, *see* ECF No. 3 at 9–12, and additional facts would not render that theory plausible, amending the Complaint is futile. *See Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). Accordingly, the Complaint will be dismissed with prejudice. *See United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). An appropriate order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**